UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-23099-CIV-KING/DUBÉ

BLANCA S. BALDELOMAR,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #13) and the Motion for Summary Judgment filed by the Defendant (D.E. #16) pursuant to a Clerk's Notice of Magistrate Judge Assignment entered by the Clerk of Court, United States District Court for the Southern District of Florida. The issue before the Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff, Blanca S. Baldelomar (hereinafter "Baldelomar" or "Plaintiff").

## I. FACTS

The Plaintiff filed applications for disability insurance benefits and supplemental security income on October 19, 2006, which asserted disability as of June 1, 2003. (R. 158-164, 165-172).[1] The applications were denied initially and on reconsideration. (R. 66-77, 81-87). Following a hearing on November 19, 2008 (R. 37-65), the administrative law judge (hereinafter "ALJ") issued

---

[1] All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

a decision denying the request for benefits. (R. 9-36).[2] A request for review filed with the Appeals Council was denied. (R. 1-6).

The Plaintiff, age 50 at the time of the hearing on November 19, 2008, testified she is a United States citizen and took the citizenship exam on June 2008 in English. (R. 41, 53). The Plaintiff further testified that in Nicaragua she completed the 6th grade. (R. 53-54). Baldelomar stated she reads and writes English, but does not speak it much. Additionally, the Plaintiff stated she drives and has a valid driver's license, but got to the hearing by train. (R. 42). The Plaintiff asserted she is not married and lives with her 2 daughters, ages 23 and 25 years old. (R. 42-43). According to the Plaintiff, her 23 year old daughter works, however, her 25 year old daughter has a schizophrenia disorder and is disabled. The Plaintiff claimed she spends the whole day with her daughter and cannot leave her alone because she needs supervision in administering her medication. (R. 43-44). The Plaintiff stated her neighbor is watching her daughter while she is at the hearing. (R. 52).

The Plaintiff testified her physical limitations include not being able to squat down or lift any heavy weight because of pain in the right side of her neck and shoulder. (R. 44). The Plaintiff further testified she has problems walking due to problems in her "lumbar area of the back." (R. 45). Baldelomar claimed she is able to walk about 25 feet before experiencing pain; and always feels pain when standing and needs to hold onto something. (R. 45-46). The Plaintiff described her typical day as follows:

> I go around in the house, have breakfast. I prepared the milk. I dust or use a piece of paper to dust over the counter or with the hand, wipe the counter. Then I sit down. I watch a TV program. Afterwards, I get tired of being sitting down because I cannot be sitting down for too long. I have to be comfortable. I cannot be sitting down the way

---

[2] The record contains a duplicate copy of the ALJ's decision. (R. 130-157).

> I have my head, in the position I have my head now because a tremor develops or starts in the shoulders. If I am in one fixed position, I have to change positions, and to try the spinal cord be in the upright position.

(R. 46).

According to Baldelomar, she is able to prepare rice; does not do any chores; does not receive any visitors and "hardly ever" visits anyone; went to church 3 months ago; and last worked in 2003. (R. 46-47). The Plaintiff asserted she stopped working because she was "experiencing too many dizzy spells" and was not able to drive. (R. 47). The Plaintiff stated she received $44,700 from worker's compensation due to an accident in 1999. (R. 48). The Plaintiff described her accident as falling on the floor when she worked as a packer and hurting her lumbar spine and hip. (R. 49).

The Plaintiff also testified about her emotional and psychological limitations and noted she suffers from insomnia, lack energy, crying spells, thinking she is going to die, and fear. (R. 50). The Plaintiff claimed she takes Seroquel, Lorazepam, Paroxetine (30 milligrams), and Norvasc (10 milligrams) on a daily basis. (R. 50-51). Baldelomar stated in October 14, 2008, she was prescribed Tramadol for 7 days to be taken every 8 hours. However, according to Baldelomar, the medication was useless. (R. 51). The Plaintiff testified that her pain medications do not take away the pain. (R. 52).

Counsel for the Plaintiff asked Baldelomar how often she has "no energy" to which she responded, "[a]lmost all the time." Additionally, Baldelomar testified that her mood is "not so good," and she has a lot of pain on her waist and neck. (R. 52). According to the Plaintiff, her hobbies include trying to read English, although she is not able to concentrate and understand what she is reading. (R. 52-53). Baldelomar is not able to follow the plot of a TV program from beginning to end, and sometimes does not remember to take her medications on time or attend her medical

appointments. The Plaintiff asserted her opinion of herself is "worthless, useless, that I'm going to die." (R. 53).

The Plaintiff testified that in the past 15 years she has held 7 jobs which included packer and seller as a self-employed person in a flea market; packer in a purse factory; packer for all sorts of merchandise at ABC Distribution; florist at a flower company; and cleaning empty apartments. (R. 54).

In addition to the Plaintiff's testimony, Pedro Roman, a vocational expert, testified at the Plaintiff's hearing. The VE identified the Plaintiff's prior work as hand packager, DOT #920.587-018, medium with an SVP of 2, but at times performed at the light exertional level by the Plaintiff; cleaner, housekeeping, DOT #323.687-014, light with an SVP of 2; peddler, DOT #291.457-018, medium with an SVP of 3, but performed at the light exertional level by the Plaintiff. (R. 55-57).

The ALJ presented Roman with a hypothetical of a person with the same age, education and work experience as the Plaintiff, capable of performing the exertional demands of a partial range of medium work as defined by Social Security Regulations, i.e. able to lift/carry 25 pounds frequently; 50 pounds occasionally; sit 6 hours in an 8-hour workday; and stand and walk for 6 hours in an 8-hour day. (R. 57). The person is right-hand dominant; can never climb ladders, ropes or scaffolds and never balance; able to stoop, kneel and crouch occasionally. (R. 57-58). Additionally, the person is able to understand, remember and carry out short simple instructions; and respond appropriately to supervision, coworkers and to changes in routine work settings. (R. 58). In response to this hypothetical, Roman stated that said person could perform the Plaintiff's past relevant work of hand packager and cleaner housekeeping as described in the DOT and as the Plaintiff performed it. (R. 58).

The ALJ then asked a second hypothetical question which described an individual with the

4

same age, education and work experience as the Plaintiff, capable of performing the exertional demands to lift/carry 10 pounds frequently; 50 pounds occasionally; sit 6 hours in an 8-hour workday; and stand and walk for 2 hours in an 8-hour day, with a sit/stand option with alternating intervals of 30 minutes. The person is right-hand dominant; can climb ramps and stairs occasionally; never climb ladders, ropes or scaffolds and never balance; able to stoop, kneel, crouch, and crawl occasionally. Additionally, the person is able to perform the basic demands of unskilled work in that she can understand, remember and carry out short simple instructions; and respond appropriately to supervision, coworkers and to changes in routine work settings. (R. 59). In response to this hypothetical, Roman stated that said person could not perform any of the Plaintiff's prior work. (R. 60).

The VE did list other jobs which a person with the aforementioned restrictions could perform, which included: ticket printer and tagger, DOT #652.685-094, light with an SVP of 2; spice mixer, DOT #520.687-062, light with an SVP of 2; stringer, DOT #509.687-018, light with an SVP of 1; assembler, DOT #734.687.018, sedentary with an SVP of 2; finisher, DOT #731.687-014, sedentary with an SVP of 2; buckle wire inserter, DOT #734.687-034, sedentary with an SVP of 1. (R. 60). The VE noted that there are 3,561 light, unskilled jobs; and 570 sedentary, unskilled jobs in Dade and Broward Counties; 12,383 light jobs and 1,981 sedentary jobs in the state of Florida; and 374,001 light jobs and 49,840 sedentary jobs in the national economy. However, the VE further noted that a reduction of 30-35% would apply to these numbers due to the sit/stand option. (R. 61-62).

Furthermore, the ALJ asked a third hypothetical question which assumed the exact same exertional and nonexertional limitations as in the second hypothetical with the exception that said person can be expected to miss more than 4 days a month due to psychological symptoms. The VE

opined that such a person would not be able to engage in any type of work. (R. 62).

Next, counsel for the Plaintiff asked Roman to assume an individual with the same age, education, work experience and knowledge of English. This person is able to carry/lift 10 pounds frequently and 50 pounds occasionally; sit, stand and walk 1 hour in an 8-hour workday; use both hands frequently for simple grasping and fine manipulation; and both feet occasionally. Additionally, this individual can never crawl; can climb, stoop, crouch and kneel occasionally; balance frequently; reach and push/pull occasionally; handle and feel frequently; and had no environmental restrictions. Counsel for the Plaintiff asked if this person would be able to perform any of the Plaintiff's previous relevant jobs. The VE responded that such individual would not be able to perform any work because of the fact that she would not be able to work a full 8-hour day. (R. 63-64).

A second hypothetical question was asked by counsel for the Plaintiff which included the same vocational background as the previous hypothetical with the following psychiatric limitations: "poor" in relating to coworkers, the public, supervisor, work stress, and maintaining attention and concentration. (R. 64). The VE responded that such a person would not be able to perform any work. (R. 64-65).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. However, a review of the medical records and the specific issues raised by the Plaintiff in her Motion for Summary Judgment shows that the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

After a hearing and review of the record, the ALJ issued an opinion finding that the Plaintiff suffered from discogenic disease, cervical and low back pain, dizziness, pain disorder and depression

which were severe, but did not meet or equal the severity in the listing of impairments. (R. 17-18). The ALJ also found that the Plaintiff did retain the residual functional capacity to perform a reduced range of light work and has the mental capacity to perform the basic demands of unskilled work. (R. 21, 33). Specifically, the ALJ noted as follows:

> The claimant can lift and carry twenty pounds occasionally and ten pounds frequently. She can push and or pull similar amounts with the upper extremities. The claimant can sit up to six hours in an eight hour work day. She can stand and walk a maximum of two hours in an eight hour work day, affording the opportunity to alternate positions between sitting and standing at 30 minute intervals. In addition she cannot perform work activities requiring climbing ladders, ropes or scaffolds and balancing. She can occasionally climb ramps or stairs, stoop, kneel, crouch and crawl. The claimant has no further physical limitations. However, the claimant has additional nonexertional limitations in that she can only perform the basic demands of unskilled work. To that end, the claimant is able to: (I) understand, remember and carry out short and simple instructions; (ii) respond appropriately to supervision; (iii) interact appropriately with co-workers; and (iv) respond appropriately to changes in routine setting (SSRs 85-15 & 96-9p).

(R. 21).

Additionally, the ALJ determined that the Plaintiff could not perform any of her past relevant work. (R. 33). However, the ALJ concluded that based on the Plaintiff's age, education, work experience, and RFC, there were other jobs which existed in significant numbers in the national economy which the Plaintiff could perform. (R. 34). As such, the ALJ determined that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 36).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971);

Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991); See also, Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that he is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

The Plaintiff's first point of contention is that the ALJ failed to accord adequate weight to the opinion of Miguel D. Ramirez, M.D., the Plaintiff's treating psychiatrist. Specifically, the

9

Plaintiff contends the treating psychiatrist's opinion was not only fully supported by his own records but also by the report of the consultative psychologist.

The opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis. Lewis v. Callahan, 125F.3d 1436, 1440 (11Cir. 1997). Good cause has been seen when the treating doctor's opinion was not bolstered by the evidence; the evidence supported a contrary finding or the opinion was conclusory or inconsistent with the physician's own medical records. If the ALJ disregards the opinion of a treating physician, the ALJ must clearly articulate his reasons. See Phillips v. Barnhart, 357 F.3d 1232, 1240-12441 (11th Cir. 2004).

With regard to opinion of Dr. Ramirez, the ALJ stated as follows:

> With respect to the claimant's mental limitations, I give controlling weight to Dr. Ramirez's treatment notes (Exhibits 17F, 21F and 25F). I give substantial weight to Dr. Ramirez's May 2007 assessment of the claimant's mental abilities (Exhibit 15F). This assessment is compatible with a mental residual functional capacity to do unskilled work. I give some weight, albeit not substantial weight, to Dr. Ramirez's October 2008 assessment (Exhibit 31F) of the claimant's mental abilities as that report is not entirely supported by Dr. Ramirez's own treatment notes (Exhibits 17F, 21F and 25F) as well as the claimant's activities of daily living. Accordingly, I find that Dr. Ramirez's assessment described in Exhibit 31F is not entitled to controlling or significant weight.
>
> The overall medical evidence of record shows that the claimant's psychiatric treatment resulted in improvements to her condition. (See Exhibits [] 17f at pgs. 4, 10, 11, 13; 21F at pg. 8; and 25F at 1 – where the claimant reports "feeling better.["]. See also Exhibits 17F at pgs. 4, 10; and 21F at pgs. 8, 9, 10 – where the claimant was considered as responding well to her medications). As set forth in greater detail above, at no point during her treatment was there any indication that the claimant's personality was deteriorating. She was never hospitalized for psychiatric conditions. Her therapy sessions lasted approximately 20 minutes and were in the nature of medication management sessions. She was referred to -- but never attended -- individual psychotherapy sessions. She never had homicidal or

10

> suicidal ideations. Despite her alleged mental limitations, she is the primary caregiver for her disabled adult daughter. The claimant also monitors her daughter's medication. This is a task that requires concentration, attention to details and the adherence to a time schedule.

(R. 32).

The Court finds the Plaintiff's argument lacks merit. The ALJ specifically addressed the application of the weight accorded to the treating psychiatrist's medical evidence of record . First, the ALJ gave controlling weight to the treatment notes of treating psychiatrist, Miguel Ramirez, M.D., from Jackson North Community Mental Health Center, cited as Exhibits 15F, 17F, 21F, 25F and 31F. A review of same supports the ALJ's findings. For example, pursuant to the treatment record, the Plaintiff's insight and judgment were assessed from April 2006 through September 2007 by Dr. Ramirez. (R. 444-459, 467-470, 490-497). The initial assessment of the Plaintiff's insight and judgment indicated "fair" diagnoses. (R. 458).[3] In May and June 2006, September through December 2006, and March, May and June 2007, the Plaintiff continued to have "fair" insight and judgment. (R. 445-447, 449-452, 454-455). In February 2007, the Plaintiff was noted to have good insight and judgment. (R. 448). The Plaintiff was noted to have a treatment rating of poor insight and fair judgment in July 2006 and September 2007. (R. 444-453).

Additionally, the remainder of the Plaintiff's medical record regarding her mental status supports the opinion of the ALJ. The Plaintiff's psychiatric evaluation and adult bio-psychosocial performed in April 2006 initially reported auditory and visual hallucinations (R. 458, 462) and the treatment record documented less frequent hallucinations on June 19, 2006 and July 17, 2006. (R. 453-454). The remainder of the outpatient treatment records did not document the presence of

---

[3] The record contains a duplicate copy of the initial psychiatric evaluation. (R. 467-470).

hallucinations. (R. 444-452, 455).

The ALJ gave substantial weight to a Medical Assessment of Ability to do Work-Related Activities (Mental) performed by Dr. Ramirez on May 17, 2007. (R. 408-409). The medical assessment, revealed a rating of "poor" for the categories of relating to co-workers, dealing with work stress, understanding and remembering and carrying out complex job instructions, and relating predictably in social situations. Such a rating of "poor" denoted that her ability to function in a particular area was seriously limited but not precluded. However, in the categories of following work rules, interacting with supervisor(s), functioning independently, maintaining attention and concentration, understanding, remembering and carrying out detailed but not complex and simple job instructions, behaving in an emotional stable manner, and demonstrating reliability, the Plaintiff scored a rating of "fair" denoting the Plaintiff's ability to function in these areas was limited but satisfactory. Dr. Ramirez noted a rating of "fair" and "poor" for the category of the Plaintiff's ability to use judgment. The Plaintiff was further noted to be able to manage her own best interest. (R. 409).

On October 6, 2008, Dr. Ramirez completed a second Medical Assessment of Ability to do Work-Related Activities (Mental). The medical assessment found a rating of "good" for the category of maintaining personal appearance; "fair" for the categories of following work rules, using judgment, functioning independently, understanding, remembering and carrying out detailed, but not complex and simple job instructions, behaving in an emotionally stable manner, and demonstrating reliability; and "poor" was noted for all other categories. (R. 557-558).

The ALJ found the October 2008 assessment was more restrictive than his May 2007 and thus little weight was assigned to the second assessment by the ALJ. (R. 29). Specifically, the ALJ

found the second assessment findings correlated to the findings of the initial assessment performed on May 17, 2007, with the exception of a few categories. (R. 29). The assessment of the Plaintiff's interaction with supervisors decreased from a rating of "fair" to "poor." Additionally, a new conclusion was reached by Dr. Ramirez indicating the Plaintiff had a "poor" ability to deal with the public whereas no opinion by Dr. Ramirez had previously been expressed on that particular point, and the Plaintiff's ability to maintain attention and concentration was decreased from a rating of "fair" to "poor" (R. 29, 408, 557). The ALJ found that the assessment performed on October 2008 was given less weight than the May 2007 assessment on the basis that the change in the aforementioned findings were not entirely supported by the treating psychiatrist's own treatment notes.

Next, regarding the report of consultative psychologist, Jacquelin Alexis, Ph.D., performed on December 11, 2006, Dr. Alexis noted that the Plaintiff reported experiencing auditory and visual hallucinations. (R. 368-370). However, Dr. Alexis also noted no evidence of obsession, phobias, ideas of reference, hallucinations, delusions, perceptual disturbance or psychotic distortions at the time of the evaluation. (R. 369). The Plaintiff was diagnosed with pain disorder and major depressive disorder. (R. 370). Additionally, Dr. Alexis noted that the Plaintiff would require supervision in managing her personal funds, but Baldelomar was noted to "generally [be] able to care for herself." (R. 370). Dr. Alexis indicated that the Plaintiff's performance of all activities at a very slow pace would significantly impact any job performance, however, no deterrents to job performance were noted. (R. 370). The ALJ concluded that the Plaintiff's manifestations at the consultative examination were exaggerated and contrary to the medical evidence of record, and thus, only some weight was afforded to this examination. The ALJ added that Dr. Alexis' findings were

13

corroborated by the findings of Dr. Hudec who saw the Plaintiff on November 29, 2006, and who noted that the Plaintiff had reported no hallucinations or delusions or suicidal ideations (R. 30, n.7).

It is the opinion of this Court that substantial weight was afforded to the opinion of the treating psychiatrist, Dr. Ramirez, and supported by the treatment record that was not inconsistent with the treating psychiatrist's own medical records. Furthermore, the ALJ specifically accorded less weight to assessment conducted by Dr. Ramirez in October 2008 on the basis that the assessment was more restrictive and unsupported by the doctor's own treatment notes. Additionally, although the ALJ afforded less weight to the findings of Dr. Alexis, such a determination was made on the basis of limiting the weight of the record to only those portions that could be corroborated by the medical evidence of record. Nevertheless, as noted by Dr. Alexis' consultative report, the significant impact on the Plaintiff's job performance was a slow pace for all activities but such a factor was not noted by Dr. Alexis to preclude the Plaintiff from work. Therefore, this Court finds that the ALJ's findings were not conclusory or inconsistent with the medical record, and his findings complied with the standard set forth by the Eleventh Circuit.

The Plaintiff's second point of contention is that the ALJ created an illusory RFC on the basis of hypothetical questions posed to the VE that were not representative of the Plaintiff's RFC. The residual functional capacity is an assessment which is based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997), citing, 20 C.F.R. §404.1545(a). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess...her work-related abilities on a function by function basis...only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." Freeman v. Barnhard, 220 Fed. Appx. 957, 960

(11th Cir. 2007). Furthermore, the "determination of residual functional capacity is within the authority of the ALJ and the assessment should be based upon all the relevant evidence of a claimant's remaining ability to do work despite her impairments." Beech v. Apfel, 100 F. Supp.2d 1323, 1330 (S.D. Ala. 2000), citing 20 C.F.R. §404.1546, Lewis v. Callahan, 125 F.3d at 1440.

Regarding the Plaintiff's RFC, the ALJ stated the following:

> In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

(R. 21).

The ALJ further stated:

> In sum, after considering the medical evidence of record and the claimant's testimony, it is clear that the claimant suffers from severe impairments. Notwithstanding these impairments, the claimant retains the residual functional capacity to perform a limited range of light work and has the mental capacity to perform the basic demands of unskilled work. She remains able to: (I) understand, remember, and carry out short and simple instructions; (ii) respond appropriately to supervision; (iii) interact appropriately with co-workers; and (iv) respond appropriately to changes in routine work settings. In conclusion, the claimant can perform the mental demands of unskilled work, as set forth in finding five of this decision.

(R. 33).

The ALJ considered the medical evidence of record, as well as the Plaintiff's testimony, in determining the Plaintiff's RFC taking into account the Plaintiff's physical limitations as well as her mental capacity to perform the mental demands of work. The symptoms of the Plaintiff that were consistent with the medical record were used to make the RFC finding. Contrary to the Plaintiff's

argument, this Court finds that the ALJ's RFC determination was not based upon an illusory hypothetical posed to the VE. In fact, the ALJ asked the vocational expert several hypothetical questions with varying degrees of limitations. The ALJ is not required to find the Plaintiff not disabled on the basis of a hypothetical, which the ALJ ultimately determined used noncredible limitations.

Specifically, the ALJ asked the VE the following hypothetical:

> ...assume a person of the Claimant's age, education and work history. Like you to further assume that this person has the residual functional capacity to frequently lift and carry 10 pounds and occasionally lift not more than 50 pounds. That this person could sit six hours in an eight-hour workday, that they could stand and walk about two hours in an eight-hour workday and that there's a sit/stand option with alternating intervals of 30 minutes. The hypothetical person is right-handed. They could occasionally climb ramps and stairs. They could never climb ladders, ropes, or scaffolds. They could never balance. They would be limited to jobs which only occasionally involve stooping, kneeling, only occasionally involve crouching, and only occasionally involve crawling. The hypothetical person can perform the basic demands of unskilled work and that they can understand, remember, and carry out short and simple instructions, respond appropriately to supervision, interact appropriately with coworkers, and respond appropriately to changes in routine work settings.

(R. 59).

Despite the Plaintiff's contention regarding the use of a particular hypothetical, a determination of the RFC is within the authority of the ALJ and such authority was properly executed. This Court finds that the Plaintiff's RFC was based upon all the relevant evidence and took into account the Plaintiff's physical limitations as well as mental impairments. It is irrelevant that under other hypothetical questions the Plaintiff would have been found to be disabled. The Court finds the Plaintiff's second point of contention lacks merit as the requirements set forth in SSR96-8p were followed.

## III. <u>CONCLUSION AND RECOMMENDATION</u>

Based on the foregoing, this Court finds that the decision of the ALJ was supported by substantial evidence and that the correct legal standards were applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be **AFFIRMED**. Accordingly, the Motion for Summary Judgment filed by the Plaintiff (D.E. #13) should be **DENIED** and the Motion for Summary Judgment filed by the Defendant (D.E. #16) should be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable James Lawrence King, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. <u>Loconte v. Dugger</u>, 847 F.2d 745 (11th Cir. 1988), <u>cert. denied</u>, 488 U.S. 958 (1988); <u>R.T.C. v. Hallmark Builders, Inc.</u>, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this 14 day of March, 2011.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE